THOMPSON OIL & GAS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10600.  Promulgated March 20, 1929.

*Phil D. Morelock, Esq.*, for the petitioner.
*Arthur H. Fast, Esq.*, for the respondent.

994

OPINION.

LITTLETON: The issue concerns the proper basis for computing the deduction from gross income allowable for the year 1918 on account of depletion of oil land operated by the petitioner under a lease contract.

The Revenue Act of 1918 provides in material part as follows:

SEC. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*    \*    \*    \*    \*    \*    \*

(9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: *Provided,* That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date: \*  \*  \*

The controversy arises as the result of a limitation in the Revenue Act of 1913 with respect to the depletion allowable as a deduction from gross income for income-tax purposes. A part of the stipulation which we did not incorporate in our findings is this statement: "For the years 1913, 1914, and 1915, which were taxed under the 1913 Act, the depletion allowance could not exceed '5 per centum of the gross value at the mine of the output for the year for which the computation is made.'" It is further shown that 5 per cent of the gross income from March 1, 1913, to December 31, 1915, was $6,322.02, whereas the depletion sustained for this period was $91,686.15 and the argument presented by both parties proceeds on the theory that the depletion allowable as a deduction from March 1, 1913, to December 31, 1915, was $6,322.02. Our consideration of the issue presented will, accordingly, be based on this agreement of the parties that the depletion allowable to the petitioner as a deduction from gross income from March 1, 1913, to December 31, 1915, was $6,322.02, whereas

the depletion sustained during this period on the March 1, 1913, value was $91,686.16.

When the Commissioner came to determine the depletion allowance for the year 1918, he took the March 1, 1913, value of the recoverable oil reserve at March 1, 1913, $156,645, and the oil reserve at this time of 278,000 barrels as a starting point. From this he determined a depletion unit of 56.347 cents per barrel. The production from March 1, 1913, to December 31, 1915, was 162,717 barrels or a reduction in the March 1, 1913, value of the oil reserve of $91,686.15. In 1916 there was an additional cost of $30,000 and an addition to the oil reserve of 300,000 barrels. On account of this additional cost and the addition to the oil reserve, the Commissioner found it necessary to determine a new depletion unit on the basis of the oil yet to be recovered in 1916, the March 1, 1913, value which remained undepleted at this time and the additions which were made at this time in cost and in the quantity of oil to be recovered. The value to be recovered in 1916 was determined by deducting from the March 1, 1913, value of $156,645 the depletion sustained from March 1, 1913, to December 31, 1915, $91,686.15, and adding to this remainder the additional cost in 1916 of $30,000, which showed a capital sum yet to be recovered of $94,958.85. The recoverable oil in 1916 was similarly determined; that is, from the oil reserve in 1913, 278,000 barrels, was deducted the oil produced from March 1, 1913, to December 31, 1915, 162,717 barrels, and to this remainder was added the addition to the oil reserve in 1916 of 300,000 barrels, which showed oil yet to be recovered in the amount of 415,283 barrels. The depletion unit was then arrived at by dividing the remaining recoverable value by the remaining recoverable oil, which produced a unit of 22.866 cents per barrel. No additions are shown to cost or the oil reserve from 1916 to 1918. To obtain the allowance for depletion sustained for 1916, 1917, and 1918, the production in each of those years was multiplied by the depletion unit of 22.866 cents shown above. That is, for 1918 the depletion allowance determined and allowed by the Commissioner was $7,705.16, which was obtained by multiplying the oil produced in 1918, 33,697 barrels, by the depletion unit of 22.866 cents.

The precise and specific question raised on account of the foregoing allowance is whether, in determining the depletion unit applicable to the year 1918, the action of the Commissioner was correct in reducing the recoverable leasehold value by the depletion sustained from March 1, 1913, to December 31, 1915, or whether, as the petitioner contends, such recoverable value should be reduced only by the depletion which the parties have agreed the petitioner was entitled to take as a deduction from gross income in its income-tax returns for those years. At the outset it should be observed

that no particular method is outlined for determining the depletion allowance under section 234 (a) (9), *supra*, the controlling principle being that it shall be reasonable, nor are we interested in the means by which this end is accomplished. Our questions then are: Did the Commissioner determine a reasonable allowance? And, if not, will such result be obtained by following the petitioner's contention?

That a reasonable allowance for the depletion of a wasting or exhaustible asset, such as we have here, will be obtained by considering that the recoverable value will become exhausted in the same ratio as that which gives value to the asset disappears, can hardly be questioned. *Lynch* v. *Alworth-Stephens Co.*, 267 U. S. 364. For example, if at January 1, 1917, a taxpayer had purchased a leasehold for the recovery of oil at a cost of $100,000 with oil to be recovered of 400,000 barrels, and if, during 1918, 100,000 barrels had been produced, a depletion allowance of $25,000, or 25 cents per barrel would certainly be accepted as the reasonable depletion allowance for 1918. Nor do we understand that the petitioner would deny that the foregoing result is in full compliance with the statute, provided the full exhaustion in 1917 was likewise deductible. But the petitioner, in effect, says that the foregoing method would not be correct if there had been a limitation in a statute applicable to 1917 on account of which the full depletion sustained for 1917 had not been allowable as a deduction from gross income for 1917, and, it seems to us, contends further that whatever depletion was sustained in the prior year which was not allowable as a deduction from gross income in such year should effectually be allowed as a part of the depletion deductions in later years to the end that when the asset is finally depleted its full capital value may have been allowed as deductions from gross income. We find nothing in the statute which justifies this conclusion. What the statute provides for is a reasonable allowance and we can not interpret this to mean more than a reasonable allowance based upon the exhaustion which occurred during a given year. To follow the petitioner's theory would be to say that the exhaustion which occurred from March 1, 1913, to December 31, 1915, of approximately $85,000, which the parties have agreed was not an allowable deduction in those years, should be added to deductions which are allowable on account of exhaustion which occurred in later years. This theory is unsound. It may well be that under the limitations set out in the 1913 Act the full capital cost or March 1, 1913, value will never be recovered as a deduction in the form of a depletion allowance, but a limitation was expressly provided by the 1913 Act and its constitutionality has been upheld. *Stanton* v. *Baltic Mining Co.*, 240 U. S. 103. We find nothing in the 1918 Act under which we are making our determination in this case which would permit

a greater depletion allowance in a given year than that based on the exhaustion which occurred in such year. When exhaustion of the capital value occurred from March 1, 1913, to December 31, 1915, of $91,686.15 and the petitioner was entitled to deduct only $6,322.02 of this amount, the excess which the petitioner was not entitled to deduct had as truly disappeared from the capital value as if it had been allowed as a deduction.

Nor can we agree that the case of *United States* v. *Ludey*, 274 U. S. 295, on which the petitioner relies, supports its position. That case involved the gain or loss on the sale of capital assets under the Revenue Act of 1917, and had for one of its questions the adjustment which should be made to cost or the March 1, 1913, value on account of depreciation and depletion from date of acquisition, or March 1, 1913, to the date when the assets were disposed of. The court held that:

* * * Congress doubtless intended that the deduction to be made from the original cost should be the aggregate amount which the taxpayer was entitled to deduct in the several years.

This decision, however, related to an entirely different section of the statute from that which we are now considering. Here we are concerned with the reasonable allowance for depletion in a given year, and not with the gain which may be realized or loss sustained when the asset is ultimately disposed of. It is true that the court made the following statement in the *Ludey* case with respect to the theory of depletion:

The depletion charge permitted as a deduction from the gross income in determining the taxable income of mines for any year represents the reduction in the mineral contents of the reserves from which the product is taken. The reserves are recognized as wasting assets. The depletion effected by operation is likened to the using up of raw material in making the product of a manufacturing establishment. As the cost of the raw material must be deducted from the gross income before the net income can be determined, so the estimated cost of the part of the reserve used up is allowed. * * *

But this statement of the court can not be interpreted as meaning that because there was a gradual sale in one year, in the form of depletion sustained which is a proper charge against manufacturing operations for such year, a part of such depletion allowance is chargeable against the operations of another year, or that a reasonable allowance for a given year on account of depletion contemplates something other than the exhaustion which occurred in such year. In fact, to grant what the petitioner is asking would be giving to it in the taxable year that which the parties are agreed the statute expressly prohibited it from taking in such earlier years and when we find nothing in the statute to permit such a deduction.

In view of the foregoing, we are of the opinion that in determining the depletion allowance for 1918, the Commissioner was correct in

taking into consideration the actual depletion sustained from March 1, 1913, to December 31, 1915, regardless of the depletion which was allowable as a deduction for income-tax purposes in those years.

The original petition also contained an assignment of error with respect to the rate applied by the Commissioner in his determination of petitioner's profits tax under the provisions of section 328 of the Revenue Act of 1918, but no evidence was introduced on account thereof nor was this error included in the amended petition or urged in the brief filed by the petitioner.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

TRUSSELL, GREEN, and VAN FOSSAN dissent.

---

TRAMMELL, dissenting: The deduction allowed for depletion in the case of mines is a special application of the general rule of the statute allowing a deduction for exhaustion of property. *Lynch* v. *Alworth-Stephens Co.*, 267 U. S. 364. The end sought in an exhaustion allowance is to have the capital sum invested in a wasting asset returned to the taxpayer as a charge against receipts annually realized from the asset and in this way avoid taxing a return of capital. The entire amount of such receipts is not taxable, but only so much thereof as does not represent a return of capital. *Edith Andrews Logan*, 12 B. T. A. 586. In essence, the deduction for depletion does not differ from the deduction for depreciation, and the proviso limiting the amount of such deductions to the amount of the capital invested shows that such deductions are to be regarded as a return of capital. *United States* v. *Ludey*, 274 U. S. 295.

In the case of oil wells operated by a lessee, the value of the lease contract is at all times in proportion to the recoverable oil content. As the oil is pumped out, the value of the lease is correspondingly diminished, so that when the oil reserve is fully exhausted, the value of the lease is likewise exhausted, and no part of the capital asset remains. The process is comparable to the gradual sale of the lease in units measured by the barrels of oil recovered and sold. The proceeds from the sale of the oil represent in part a return of capital and in part taxable income.

In *United States* v. *Ludey, supra*, the court in the course of its opinion said:

The depreciation charge permitted as a deduction from the gross income in determining the taxable income of a business for any year represents the reduction, during the year, of the capital assets through wear and tear of the

plant used. The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost. The theory underlying this allowance for depreciation is that by using up the plant a gradual sale is made of it. The depreciation charged is the measure of the cost of the part which has been sold. When the plant is disposed of after years of use, the thing then sold is not the whole thing originally acquired. The amount of the depreciation must be deducted from the original cost of the whole in order to determine the cost of that disposed of in the final sale of properties. Any other construction would permit a double deduction for the loss of the same capital assets.

\*      \*      \*      \*      \*      \*      \*

The depletion charge permitted as a deduction from the gross income in determining the taxable income of mines for any year represents the reduction in the mineral contents of the reserves from which the product is taken. The reserves are recognized as wasting assets. The depletion effected by operation is likened to the using up of raw material in making the product of a manufacturing establishment. As the cost of the raw material must be deducted from the gross income before the net income can be determined, so the estimated cost of the part of the reserve used up is allowed.

In the *Ludey* case, the court had before it the question of whether a gain was realized or a loss sustained upon the sale in 1917 of oil mining properties and the solution of the question depended primarily on whether deductions for depletion and depreciation were to be made from the original cost. The property consisted, besides mining equipment, in part of oil land held in fee, and in part of oil mining leases, which had been owned and operated by Ludey for several years. The tax in controversy was computed on the basis of cost reduced by the full amount of depreciation and depletion sustained, whether or not allowable by law as a deduction from gross income in past years, and the Government contended that this was the correct basis for the computation. On the other hand, Ludey contended that the correct basis for determining gain or loss on the sale of his property was original cost reduced by an amount not in excess of the deductions actually claimed by and allowed to him during the years from 1913 to 1916 on account of depletion and depreciation, without regard to the amount he was entitled to deduct under the law. The court declined to accept either contention, saying:

Congress doubtless intended that the deduction to be made from the original cost should be the aggregate amount which the taxpayer was entitled to deduct in the several years.

In accordance with the foregoing rule, if the petitioner in this proceeding had sold its oil mining lease in 1918, the basis for determining gain or loss on such sale would have been the March 1, 1913, value, less the aggregate amount which it was entitled to deduct in the preceding years on account of depletion, without regard to either

the amount of the depletion actually sustained or the amount of the deductions actually claimed and allowed.

This being the sound rule for determining gain or loss on the sale of the whole property, I am unable to perceive any fundamental distinction in the case of a *gradual sale* of the property through depletion.

I am further impelled to this view by the fact that the application of this rule will provide an equitable method by which the entire amount of the petitioner's capital investment may be returned to it through depletion allowances, tax free, which, as pointed out above, is the manifest purpose of the statutory provisions for all exhaustion allowances. This, in my opinion, will provide, as required by the statute, a reasonable allowance for depletion according to the peculiar conditions in this case.

The aggregate amount which the petitioner herein was entitled to deduct from gross income for the years 1913, 1914, and 1915 as depletion allowances was $6,322.02. It is my opinion, therefore, that the correct depletion unit to be used in computing the petitioner's depletion allowance for 1918 should be determined by reducing the agreed March 1, 1913, value (which, under the statute, must be taken in this case in lieu of original cost) by the amount of $6,322.02, the amount of depletion which the petitioner was entitled to deduct, instead of the amount of $91,686.15.

LANSDON and SIEFKIN agree with this dissent.