MURPHY OIL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14440. Promulgated March 30, 1929.

1196

*Randolph E. Paul, Esq., Valentine B. Havens, Esq., Charles B. McInnis, Esq., Thomas R. Dempsey, Esq.,* and *A. Calder Mackay, Esq.,* for the petitioner.

*John D. Foley, Esq.,* and *Lloyd W. Creason, Esq.,* for the respondent.

OPINION.

SIEFKIN: The issues raised in the first three allegations question the respondent's determination that the cost of the litigation in question and the payment made in compromise are neither deductible expenses nor capital cost which may be amortized over the remaining life of the properties. Apparently such determination was based on the conclusion that such expenditures represented personal expenses.

We think such conclusion unsound. The act complained of was committed, if at all, in the course of a business transaction. *Kornhauser* v. *United States*, 276 U. S. 145, citing with approval an administrative ruling of the Bureau where expenses of a suit for malpractice were allowed as a business expense deduction by a physician. In this case the suit brought was in no sense a prosecution for a crime or an attempt to impose a penalty. The only remedy sought was a restitution of the property, together with income derived therefrom in the *interim*. See *Consolidated Mutual Oil Co.*, 2 B. T. A. 1067; and *Frederick McLean Bugher*, 9 B. T. A. 1155.

We can not agree, however, with petitioner's contention that the expenses and payment under discussion were deductible as business expenses or losses. The complaint filed in the suit alleged fraud and the relief prayed for was an accounting and that petitioner be required to assign and transfer to complainant. all rights to receive moneys and things of value derived from the property in the future.

That is, the prayer asks for restoration of the property and all past income therefrom in excess of the consideration paid.

It should be noted at this point that the action was brought to recover two distinct classes of assets. One such class of assets was the oil properties as they existed at the time the suit was instituted. Petitioner recognized that the complaint questioned its title to the property and in answer to the prayer for restoration asserted such relief to be inequitable, and that complainant's remedy, if any, was for damages. The other asset (the accumulated earnings resulting from petitioner's operation or production in years prior to the beginning of the suit) was no longer a part of such oil properties as they had been severed from the realty. They formed a distinct group of assets to which claim was made in the action. It should, therefore, be borne in mind that, though both claims grew out of the alleged fraud, there were, nevertheless, two distinct claims asserted against two different groups of assets.

To the extent that the expenses and payment were incurred and made in defense of the claim against the oil properties they were capital expenditures. We have repeatedly held that the cost of defending title, whether in the form of legal fees or compromise payments, is a capital expenditure representing additional cost of the property. *Lincoln L. McCandless*, 5 B. T. A. 1114; *Gopher Granite Co.*, 5 B. T. A. 1216; *Seletha O. Thompson*, 9 B. T. A. 1342; *Frederick McLean Bugher, supra; North American Oil Consolidated*, 12 B. T. A. 68; *Phoenix Development Co.*, 13 B. T. A. 414. The decisions in *Kornhauser* v. *United States, supra*, and the *Superheater Co.*, 12 B. T. A. 5, which are relied upon by the petitioner, are not in conflict with these cases. In the *Superheater* case the contemplated litigation grew out of an action of the board of directors, acting as such. The claim settled did not involve title. In the *Kornhauser* case the legal expenses were incurred to contest a claim against income received, differing fundamentally from the ordinary attack on title, even though the income in question consisted of shares of stock.

In view of such conclusion we must reject petitioner's contention that the total deductions claimed should be allowed. We can not allow the total and it would be idle for us to further consider whether any part of such total (i. e., that portion allocable to the defense and settlement of the claim for accounting) is allowable as the record furnishes no basis for the apportionment of the whole among the several claims defended or settled.

The petitioner's contention that if the litigation and settlement costs are not deductible they must represent capital expenditures to be added to the amortizable capital value, must likewise be rejected. That portion of such costs which is properly allocable to the defense

and settlement of the accounting claim has nothing to do with title to the property or its future depletion. Assuming that such costs were capital expenditures, they relate to a claim against assets or moneys severed from the oil properties. *Frederick McLean Bugher*, *supra*. Undoubtedly that portion of such costs which we have held allocable to defense and settlement of the claim against the properties should increase the amortizable capital value, but we are again confronted with the fact that there is nothing in the record to permit a proper allocation to determine that amount. Accordingly, we must affirm the respondent's action on the points covered by the first three allegations of error.

The next error assigned is the reduction of depletable capital by the amount of the bonus received by the lessor as part consideration upon leasing the properties to the Standard Oil Co. of California in December of 1913. The respondent determined that $5,173,595.18 of the $5,500,000 payments received represented such a bonus, and petitioner finds no fault with such allocation. Petitioner complains only of the admitted reduction of the capital base for depletion purposes on account thereof.

The respondent's present contention as set forth in his brief is as follows:

The Commissioner made an error of method in requiring the bonus of $656,-192.48 on the Whittier property and the bonus of $4,517,595.18 on the Coyote property to be deducted as of December 1, 1913, from the capital sum returnable through depletion. On November 13, 1926, T. D. 3938 C. B. V.–2, p. 117, was promulgated amending Article 215 of Regulations 45 (1920 Edition) to read as follows:

" *Depletion—Adjustments of accounts based on bonus or advanced royalty.—* (a) Where a lessor receives a bonus in addition to royalties, there shall be allowed as a depletion deduction in respect of the bonus an amount equal to that proportion of the cost or value of the property on the basic date which the amount of the bonus bears to the sum of the bonus and the royalties expected to be received. Such allowance shall be deducted from the amount remaining to be recovered by the lessor through depletion, and the remainder is recoverable through depletion deductions on the basis of royalties thereafter received."

While the Commissioner made an error of method in deducting from the depletion basis the *whole amount* of the bonuses as of December 1, 1913, it does not follow that the Commissioner's computation of the depletion basis is incorrect. There is nothing in the record of this case to show what royalties were on December 1, 1913, expected to be received over the lives of the leases. It is entirely possible that in the interval between December 1, 1913, and December 31, 1918, royalties expected on December 1, 1913, to be received. As to this point the taxpayer must fail for lack of proof.

The respondent confesses error to the extent that he failed to follow the regulation. It remains for us to test the validity of the rule therein promulgated. In *Nelson Land & Oil Co.*, 3 B. T. A. 315, we made it clear that, in our opinion, such a bonus received by a

lessor was not a return of capital but is an advance rental or royalty and is taxable as income. That case was followed in *R. H. Hazlett*, 10 B. T. A. 332, and we are not cited and have been unable to find any authority to the contrary. See also *Henry L. Berg*, 6 B. T. A. 1287; *John T. Burkett*, 7 B. T. A. 560; *D. R. McDonald*, 7 B. T. A. 1078; and *R. H. Hazlett, supra*, in which we held that such bonuses were not gains derived from the sale of " capital assets " under the capital gain provisions of the 1921 Act.

The bonus payment in the instant case was a part of the consideration paid for the lease. While expected production undoubtedly was considered in fixing the amount of the bonus, it is elementary under the laws governing such agreements that its payment did not, in anywise, depend upon, or relate to, production. The lessee's liability therefor was fixed by the terms of the contract. On the other hand, the operation of the principle of depletion depends upon exhaustion of resources through production—i. e., the recovery of capital through its conversion from the form of oil resources or reserves into marketable products or the equivalent received for such product. Under such principle the depletion allowance for the year or years of the bonus payments can only be measured by reference to the oil produced. If, as we have pointed out, the bonus is income, no part of which represents recovery of capital, it follows that any depletion allowance against such income is a departure from the depletion concept. The regulation relied on by the respondent is clearly such a departure. While it might, in some cases at least, produce a more equitable result, the statutory allowance may not be so varied by administrative regulation.

It will be noted that the facts referred to by respondent in the last paragraph of the excerpt from his brief are essential only to the application of the rule laid down in the regulation. On the other hand, the respondent admits that he reduced the depletable base by the amount of the bonus (a known quantity) and we have held as a matter of law that no part of such bonus reduces such base. We can, on the facts presented, determine such action was erroneous. To correct such error we need only require the restoration of the amount subtracted, and it is so ordered.

The question raised by the last allegation was considered in *Thompson Oil & Gas Co.*, 15 B. T. A. 993, and decided adversely to the contention made by the petitioner herein.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MILLIKEN did not participate.

LANSDON, PHILLIPS, GREEN, and MURDOCK dissent.