T.C. Memo. 1996-177


UNITED STATES TAX COURT


ANDREW WESLEY FRANK & JOY MARY FRANK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1164-94.                    Filed April 11, 1996.


Andrew Wesley Frank and Joy Mary Frank, pro se.

<u>Kathryn K. Vetter</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income tax of $51,944 for 1991 and $12,672 for 1992 and accuracy-related penalties of $10,389 for 1991 and $2,534 for 1992.

After concessions, the issues for decision are:

1.  Whether petitioners are exempt from Federal income tax. We hold that they are not.

2.  Whether petitioners may deduct advertising expenses for selling living trusts in 1991.  We hold that they may not.

3.  Whether petitioners may deduct expenses for selling living trusts and food supplements and renting their Nebraska Street property in 1991.  We hold that they may deduct expenses to the extent stated below.

4.  Whether petitioners may deduct or capitalize for 1991 various expenses related to their Springs Road and Mesa Verde rental property.  We hold that petitioners may not deduct or capitalize some of their expenses, may deduct other expenses, and must capitalize the remaining expenses.

5.  Whether petitioners may deduct points that they paid in connection with certain loans in 1992.  We hold that they may not.

6.  Whether petitioners' losses from their airplane leasing activity are passive losses under section 469.  We hold that they are.

7.  Whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 1991 and 1992.  We hold that they are not.

Section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners

Petitioners are married and lived in Vallejo, California, when they filed their petition.

Petitioner Andrew Wesley Frank (Mr. Frank) has a bachelor of science degree in mechanical engineering and worked as a nuclear engineer at the Mare Island Naval Shipyard during the years in issue (1991 and 1992).  Petitioner Joy Mary Frank was a homemaker and beauty consultant during the years in issue.  Earl W. Frank is Mr. Frank's brother.

On their 1991 and 1992 tax returns, petitioners reported income and expenses from selling living trusts and food supplements, renting residential property, and leasing an airplane.

B.  Advertising Expenses for Living Trusts

Petitioners began to sell living trusts in 1990.  For purposes of the living trust activity, Mr. Frank advertised that he was a financial consultant for tax and estate planning purposes.  Petitioners had printed at a date not specified in the record about 200 brochures which promoted the trusts.  Mr. Frank distributed the brochures at work, church, and at other places to solicit business.  Mr. Frank met with about 10 people per month who were interested in establishing a trust.

C.   Automobile Expenses

Mr. Frank drove his car an unspecified number of times to meet with persons interested in establishing a living trust. Petitioners reported that the trust activity lost $509.95 in 1991 and $48.56 in 1992.

Petitioners marketed and distributed a food supplement drink and other dietary products.  Some customers came to petitioners' home to buy the products.  Petitioners sometimes traveled to sell the products.  Petitioners used their car to meet with several people in 1991 to discuss buying food supplement products. Petitioners deducted $349.03 in 1991 for automobile expenses related to the food supplement business.

During the years in issue, petitioners owned residential rental property at 501 Nebraska Street (Nebraska Street property).  Petitioners deducted $237.27 in automobile expenses for the Nebraska Street property.

Petitioners drove about 514 miles for the living trusts and food supplements activities and the Nebraska Street property from January to April 1991.  Petitioners maintained an automobile log in 1991, but lost the log for May to December 1991.

D.   Rental Property Expenses

1.   Springs Road Rental Property

Petitioners bought rental property at 400 Springs Road (Springs Road property) around August 18, 1992.  Petitioners

deducted $2,818.54 for closing costs related to the Springs Road property on their 1992 return.

2. Mesa Verde Rental Property

Petitioners bought a one-third interest in rental property at 316 Mesa Verde Street (Mesa Verde property) in June 1991. It was rented when petitioners and the other co-owners (the owners) bought it. The owners evicted the tenants. The owners then installed a new gas range, dishwasher, furnace, heater, front door, windows, screens, smoke detectors, a toilet, and garage door. They painted the inside and outside of the house, did some work not specified in the record relating to termites, landscaped the grounds, and refinished the floors. They repaired the sheetrock and tile in the bathroom and had general carpentry work done. The owners hired KJB Construction to repair the kitchen cabinets and counters. The owners did some of the work themselves. They kept track of how many hours each worked and paid each other $10 an hour. Mr. Frank worked 207 hours from July 10, 1991, to September 5, 1991.

The owners prepared the following schedule of expenses for the Mesa Verde property:

| Item of Expense | Amount |
| --- | --- |
| Services | $4,122.75 |
| Legal & professional | 2,949.32 |
| Supplies | 4,227.90 |
| Repairs general | 172.95 |
| Repairs carpentry | 782.59 |
| Repairs electrical & plumbing | 246.01 |
| Repairs painting | 2,172.00 |
| | 14,673.52 |

Petitioners deducted some of the following expenses related to the Mesa Verde property on their 1991 return:

| Item of Expense | Amount Deducted by Petitioners |
|---|---|
| Legal & professional | $991.49 |
| Repairs | 1,124.52 |
| Supplies | 1,409.30 |
| Services | 1,374.25 |
| | 4,899.56 |

The owners capitalized and designated a 7-year useful life for the following items:

| Item of Expense | Amount Capitalized |
|---|---|
| Spiteri Bros. refinish | $1,835.00 |
| Garage door | 795.06 |
| Stove | 534.86 |
| Heater | 260.00 |
| | 3,424.92 |

Petitioners deducted depreciation of $3,424.92 on their 1991 return.

### 3. Nebraska Street Rental Property

Petitioners deducted $345.70 for expenses for the Nebraska Street property on their 1991 return. These expenses included insurance, recording fees, plumbing expenses, inspection fees, and receipts from various hardware stores.

### E. Points

Petitioners lived at 121 Whitecliff Drive in 1992. Petitioners paid points in 1992 to refinance this home. Petitioners paid points in 1992 for an equity line of credit based on their equity in the Whitecliff Drive property.

Petitioners bought property at 106 Luann Court for about $165,000 in the last few months of 1992. Petitioners paid

$16,500 in cash and obtained a $148,500 mortgage. Petitioners paid points on that loan. Petitioners deducted $4,457.50 on their 1992 Schedule A for the points petitioner paid relating to both houses.

Petitioners had receipts for these three transactions but lost them. Petitioners did not contact the banks that arranged the financing to get copies of these documents.

F. <u>Airplane Leasing</u>

Petitioners bought an airplane for $7,700 on January 22, 1991. Mr. Frank did not know how to fly when they bought the airplane. He learned how to fly 2 or 3 years later.

Petitioners bought the airplane with the intent of making a profit. Petitioners leased it to General Aviation Pilots Association (GAPA) from January 22, 1991, to July 15, 1991, and to Slant Alpha Inc., Flight Training (SAFT) from July 1991 to the end of 1991. GAPA and SAFT rented the airplane to people learning how to fly. GAPA and SAFT paid for fuel, oil, maintenance, inspection fees, insurance, and parts. GAPA and SAFT sent statements to petitioners showing the airplane's income and expenses. GAPA or SAFT paid petitioner the profit if the airplane's income exceeded its expenses. If the airplane's expenses exceeded its income, petitioners paid the difference to GAPA or SAFT.

Mr. Frank, with a mechanic, changed the airplane's oil, removed screws from the inspection plates, and tied down and

washed the airplane.  The record does not indicate how often Mr. Frank did those things.  Petitioner spoke with flight schools (not otherwise identified in the record) to find the best rate for leasing, maintaining, and insuring the airplane.

Petitioner reported a $2,773.52 loss for the airplane in 1991 and a $3,672.39 loss in 1992.

OPINION

A.   Whether Petitioners Are Exempt From Federal Income Tax

Petitioners contend that they are not subject to Federal income tax because Mr. Frank is a "common laborer" and has an "occupation of common right".  Petitioners also contend that they revoked their tax returns for the years at issue and that, as a result, they have no contract with respondent; that they are not taxpayers; and that we lack jurisdiction because they moved to withdraw their petition, which we denied.  We disagree.

We have jurisdiction over this case because respondent properly issued notices of deficiencies to petitioners for the years in issue and petitioners timely filed a petition with this Court.  Secs. 6212(a) and 6213(a); Stamos v. Commissioner, 95 T.C. 624, 626 (1990), affd. without published opinion 956 F.2d 1168 (9th Cir. 1992).

Wages are income and a tax on wages is constitutional. Coleman v. Commissioner, 791 F.2d 68, 70 (7th Cir. 1986); Crain v. Commissioner, 737 F.2d 1417, 1417-1418 (5th Cir. 1984). Mr. Frank received wages for his work as a nuclear engineer at a

naval shipyard.  Petitioners assert nothing more than tax protester rhetoric, which this and other courts have universally rejected, to support their position that they are not subject to Federal income tax.  See In re Becraft, 885 F.2d 547, 549 (9th Cir. 1989) (Federal tax laws apply to resident U.S. citizens); Edwards v. Commissioner, 680 F.2d 1268 (9th Cir. 1982); United States v. Romero, 640 F.2d 1014, 1016 (9th Cir. 1981) (compensation for labor or services is subject to income tax); McCoy v. Commissioner, 76 T.C. 1027, 1029-1030 (1981), affd. 696 F.2d 1234 (9th Cir. 1983); Jackson v. Commissioner, T.C. Memo. 1991-498, affd. without published opinion 990 F.2d 1258 (9th Cir. 1993).  Petitioners are clearly not exempt from Federal income tax or from the imposition of additions to tax.

B.   Whether Petitioners May Deduct More Expenses Than Respondent Allowed

Taxpayers may deduct ordinary and necessary expenses paid or incurred during the taxable year to carry on a trade or business. Sec. 162(a).  A taxpayer must keep records that are sufficient to substantiate the amounts the taxpayer deducted on his or her return.  Sec. 1.6001-1(a), Income Tax Regs.

1.   Whether Advertising Expenses for the Living Trusts Are Deductible

Petitioners deducted $156.97 on their 1991 return for brochures they used to advertise living trusts.

Mr. Frank testified that the brochures cost $156.97, but did not remember in what year the brochures were printed.

Petitioners started the living trust activity in 1990. It is at least as likely that they bought and paid for the brochures in 1990 as in 1991. Petitioners used the cash basis of accounting, and a deduction is only allowed in the taxable year in which the expense was paid. Sec. 461(a). Petitioners have not shown that they paid for the brochures in 1991 and thus may not deduct the $156.97 on their 1991 tax return.

2.   Whether Petitioners May Deduct Automobile Expenses

To deduct automobile expenses, a taxpayer must show the amount, date and business purpose of each expense, the amount of miles traveled, and total automobile use for the taxable period. Sec. 280F(e); sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). The taxpayer must have adequate records or other evidence to corroborate his or her statements. Sec. 1.274-5(c)(1), Income Tax Regs. A taxpayer must maintain an account book, diary, statement of expense, or similar record and documentary evidence which, in combination and establish each element of an expense. Sec. 1.274-5(c)(2)(i), Income Tax Regs. If a taxpayer does not have adequate records, the taxpayer must establish each element of the expense by his or her own statement, written or oral, and by other corroborative evidence sufficient to establish each element. Sec. 1.274-5(c)(3)(i), (ii), Income Tax Regs.

Petitioners deducted automobile expenses for 1991 for three activities as follows:

| Activity | Miles | Amount |
|----------|-------|--------|
| Living trusts | 1,096 | $301.43 |
| Food supplement | 1,269 | 349.03 |
| Nebraska Street | 863 | 237.27 |
| | 3,228 | 887.73 |

Respondent concedes that petitioners may deduct $141.35 of this amount based upon the 514 miles petitioners' log shows they traveled from January to April 1991 for all three activities. This amount reflects all of the miles petitioners recorded in their log from January to April 1991.  Petitioners contend that they may deduct additional amounts for their living trust activity, food supplement business, and the Nebraska Street property.  As discussed next, petitioners may deduct some amounts and may not deduct others.

### a.    The Living Trust Business

Petitioners lost their log for May to December 1991. Petitioners contend that they may challenge respondent's determination by secondary proof where records are unavoidably lost.  Citing Andrew Crispo Gallery, Inc. v. Commissioner, 16 F.3d 1336 (2d Cir. 1994), affg. in part and vacating and remanding in part T.C. Memo. 1992-106.

In Andrew Crispo Gallery, Inc., the taxpayer, an art gallery, was the subject of a Federal tax fraud investigation. Id. at 1339.  In 1984, the Department of Justice subpoenaed the taxpayer's records.  Id.  In 1986, the gallery asked the Government to return the records.  Id.  The Department of Justice returned some records in 1987 and 1988, but they were in

disarray.  Id.  The Department of Justice lost many other records.  Id.  The U.S. Court of Appeals for the Second Circuit held that the gallery's inability to produce the books and records which the Government seized and did not return was not a sufficient reason to reject the gallery's claim of loss.  Id. at 1342.  Andrew Crispo is distinguishable from the present case because the Government did not lose petitioners' records; petitioners lost the records.

Petitioners introduced a bridge toll receipt, a supermarket receipt, a notary receipt, six handwritten notes, and 10 questionnaires to show that they used their car for the living trust activity from May to December 1991.  All the receipts petitioners introduced had "LT" marked on them.  The six handwritten notes listed names, numbers, addresses, and some directions.  One of the notes and the supermarket receipt were dated June 15, 1991.  Of the 10 questionnaires, 4 sought members for a financial support group sponsored by petitioners.  Those four questionnaires indicated that petitioners called the person on May 6, 1991.  The other six asked the individual responding if he or she understood a presentation about the living trusts.  Those six were dated June 15, 1991.

Petitioners listed, on one of their exhibits, what they claim are income and expenses of the trust activity.  Petitioners listed six expenses.  There were entries dated March 11, April 1, and June 27, 1991, and three dated June 15, 1991.  The six

expenses include $1 for bridge tolls, $5 for a notary fee, $5.24 for paper plates, $14 for babysitting, and $7.78[1] for 2 mileage expenses.  Mr. Frank testified that he spent these amounts in connection with the living trust activity.  Petitioners have not shown that the babysitting expense was an ordinary and necessary business expense.  See sec. 162.  We hold that petitioners may deduct all of the above stated items, except the babysitting expense.

Petitioners introduced a form dated December 19, 1991, which showed that Mr. Frank drove 640 miles to Oregon to discuss estate planning issues with his brother, Earl W. Frank.  Petitioners have not shown that the primary purpose of the trip was business related and may not take a deduction for the 640 miles.

Petitioners' evidence shows that they conducted the living trust activity before May 1991, but does not show that they conducted the activity to the same extent during and after May 1991.  Petitioners reported $125 in gross income from the living trust activity on their 1991 tax return.  Most of petitioners' receipts show expenses incurred before May 1991, some of which respondent conceded.  Petitioners have not shown that they may deduct mileage expenses for the living trust activity from May to December 1991 in excess of amounts previously allowed and discussed above.

---

[1] Petitioners' mileage deduction was computed by applying the standard mileage rate to 28.3 miles.

### b. The Food Supplement Business

Petitioners lost the log which listed their automobile use for the food supplement business from May to December 1991. In lieu of a mileage log, petitioners introduced numerous receipts to support their claim that they participated in that business from May to December 1991.

Petitioners offered a summary of income and expenses of their food supplement business. The list was marked with the letters "KM". It listed 17 expenses, such as $7 in bridge tolls, $6.52 for postage, $10.81 for failure to collect taxes on sales made, and 50 cents for parking. Mr. Frank testified that he spent these amounts for his food supplement business. We hold that petitioners may deduct $24.83 for these expenses.

### c. The Nebraska Street Property

Petitioners offered no evidence relating to automobile expenses for the Nebraska Street property. They have not met their burden of proof for this expense. Rule 142(a).

### 3. Whether Petitioners May Deduct Expenses Related to Their Purchase of the Springs Road Property

Amounts paid in connection with the acquisition of property are capital expenditures if they increase the value or substantially prolong the useful life of the property. Sec. 1.263(a)-1(b), Income Tax Regs. Amounts paid or incurred for repairs and maintenance are not capital expenditures.

Petitioners deducted $2,818.54 on their 1992 return for costs associated with their purchase of the Springs Road property.   They deducted the following as closing costs:

| Item | Amount of Expense |
| --- | --- |
| Settlement charges | $2,746.54 |
| Credit report | 97.00 |
| Lawyer fee | 80.00 |
| Mailing fees | 4.58 |
| Notary fees | 10.00 |
| Recording fees | 30.00 |
| Roofing permit fee | 72.00 |
| Fee to obtain a loan broker's license | 300.00 |
| | 3,340.12 |

Petitioners contend that they may deduct those amounts and an additional $521.58.  We disagree.

Petitioners introduced part of a HUD-1 Form which was not dated and which did not indicate the property to which it referred except for "400 Springs" written on it.  Petitioners introduced two receipts for certified mail.  The recipient of the mail was Scott Barry (not otherwise identified in the record). The receipt does not show what was mailed.  Petitioners did not show that they had a business purpose relating to the certified mail items.

Petitioners paid $300 to the State of California, Department of Corporations for a loan broker license.  The words "400 Springs" is written on the receipt.  The receipt is dated February 21, 1992.  Petitioners bought the Springs Road property in August 1992.  We are not convinced that the fee to obtain the

loan broker's license was incurred as part of petitioners' purchase of the Springs Road property.

Petitioners introduced credit report receipts dated June 21, 1991, and September 20, 1992. The words "400 Springs" were written on the receipts. Petitioners presented one receipt for a rental application dated July 27, 1992. The words "400 Springs" was written on it. We find that the expense for the September 20, 1992, report was incurred for a business purpose because it is dated near the time that petitioners bought the Springs Road property. Petitioners may deduct the second credit report and rental application expenses.

Petitioners offered three receipts, dated August 25, 1992, totaling $30, from the Solano County Assessor/Recorder's office. The receipts were for recording fees. We conclude that petitioners may capitalize these expenses because they were incurred on or near the date that petitioners bought the Springs Road property. See Thompson v. Commissioner, 9 B.T.A. 1342, 1345 (1928) (recording fees are capital expenses).

4.      Whether Petitioners May Deduct or Must Capitalize Expenses Relating to the Mesa Verde Property

Amounts paid to permanently improve property are capital expenses. Sec. 263(a). Capital expenses are amounts paid to increase the value or substantially prolong the useful life of property. Sec. 1.263(a)-1(b), Income Tax Regs. Courts have distinguished between a capital expense and a deductible business expense as follows:

A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use. The one is a maintenance charge, while the others are additions to capital investment which should not be applied against current earnings. * * *

Illinois Merchants Trust Co. v. Commissioner, 4 B.T.A. 103, 106 (1926).

Whether an expense is deductible or must be capitalized is a question of fact. See Plainfield-Union Water Co. v. Commissioner, 39 T.C. 333, 338 (1962) (the test is whether an expense materially enhances the value of property or appreciably prolongs the life of the property). Amounts paid as part of a general plan of capital improvement may be capitalized even though the payment would be deductible as an ordinary and necessary business expense if incurred separately. See Moss v. Commissioner, 831 F.2d 833, 839-842 (9th Cir. 1987) (discussing the rehabilitation doctrine), revg. T.C. Memo. 1986-128.

Petitioners contend that they may deduct expenses for legal and professional fees, repairs, supplies, and services for the Mesa Verde property.

In Kaonis v. Commissioner, T.C. Memo. 1978-184, affd. without published opinion 639 F.2d 788 (9th Cir. 1981), we distinguished between expenses that add to the value of the

property and those which restore the property to its previous condition.  Id.  We held that expenses for a patio, fence, gate, floor, tile, window treatments, paneling, light fixtures, bathroom fixtures and wash basins, tile, and a stove added to the value or prolonged the life of the property and were properly capitalized.  Id.  We found that the taxpayer's expenses for painting and cleaning restored the property to its previous condition and were deductible.  Id.  Here, the installation of the gas range, dishwasher, furnace, heater, garage door, toilet, sheetrock and tile in the bathroom, windows and screens, kitchen cabinet and counters, general carpentry work, termite work and floor refinishing added to the value of the home and must be capitalized.  See id.  The expenses of painting the inside and outside of the property restored the property to its previous condition and are deductible.  Id.

> 5.     Whether Petitioners May Deduct Expenses Relating to the Nebraska Street Property

Petitioners contend that they may deduct their expenses for the Nebraska Street property.

Petitioner introduced two receipts from Truck Insurance Exchange for $135.70 and $135.  Both show the same policy and agent number, and are dated February 15, 1992.  Neither receipt indicates the property to which it relates.  Petitioners have not shown that they incurred these expenses for a business purpose.

Another receipt was from the Solano County Recorders Office dated March 14, 1991, for a recording fee for a property not

identified.  The receipt has "501" written on it.  While the record does not show when petitioners bought the Nebraska Street property, petitioners reported income from it on their 1990 tax return.  Petitioners have not explained how a 1991 recording fee relates to property they owned at least since 1990.

Petitioners introduced a receipt from Solano Superior Court for copies and forms dated August 20, 1991.  They did not show what copies were made or whether they were made for a business purpose.

Petitioners introduced a receipt for a $20 plumbing expense dated September 26, 1991, a receipt for $75 paid to Sullivan Industries, Inc., for an inspection fee for the Nebraska Street property dated April 29, 1991, and about 23 receipts from stores including Yardbirds, Orchard Supply Hardware, Newcomb & Son, Inc., Homeclub, Payless Drug, Dan's Ace Hardware, Standard Brands Paint & Home Decorating Center, and the Solano County Recorder's Office.  Mr. Frank testified that these expenses were for general maintenance of the Nebraska Street property.  We hold that petitioners may deduct these expenses.

C. _Points_

A taxpayer may generally deduct interest paid or accrued on indebtedness.  Sec. 163(a).  Interest is compensation for the use or forbearance of money.  _Deputy v. Du Pont_, 308 U.S. 488, 498

(1940). Payments for a lender's services in connection with a loan are generally capital expenditures and must be amortized over the life of the loan. Goodwin v. Commissioner, 75 T.C. 424, 440-441 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982).

Points are amounts paid by a borrower for loan processing. Cao v. Commissioner, T.C. Memo. 1994-60, affd. without published opinion ___ F.3d. ___ (9th Cir., Feb. 29, 1996). Fees paid for loan processing can be for the use or forbearance of money or for a lender's services. Id. Points paid for the use or forbearance of money are deductible as prepaid interest. Id.

A cash basis taxpayer must generally amortize prepaid interest over the life of the loan. Sec. 461(g)(1). However, points are immediately deductible if they are paid for indebtedness incurred in connection with the purchase or improvement of the taxpayer's principal residence and the loan is secured by the home. Sec. 461(g)(2).

Petitioners deducted $4,457.50 for points on their 1992 return. Mr. Frank testified that this amount includes $1,980 from refinancing their Whitecliff Drive residence, $250 from a line of equity on Whitecliff Drive, and $2,227.50 from buying their new residence at Luann Court. Petitioners lost the records for all three transactions. They did not contact the bank to get the relevant documents or otherwise try to reconstruct the

records.  Petitioners introduced an example of a loan from Home Savings of America apparently for the Springs Road property to support their claim.

Petitioners' principal place of residence early in 1992 was the Whitecliff Drive home.  Mr. Frank testified that petitioners intended the Luann Court property to become their residence when they bought it late in 1992, and that it did become their residence.  However, petitioners' 1992 tax return, dated March 20, 1993, stated that petitioners' address was Whitecliff Drive.  Petitioners have not introduced any evidence to explain this inconsistency.  On brief, petitioners assert that they moved into the Luann Court residence in October 1992, that they immediately rented out the Whitecliff Drive property, that in February 1993, the tenants of Whitecliff Drive gave notice that they were moving out, that petitioners moved back to the Whitecliff Drive property in mid-1993, and that petitioners have lived at Whitecliff Drive and rented out the Luann Court house ever since.  Petitioners' statements in the brief are not supported by the record.  We cannot base our findings of fact on assertions made in the brief that are not supported by the record.  See United States v. Genser, 582 F.2d 292, 311 (3d Cir. 1978) (statements made by counsel in their briefs are not evidence).

We hold that petitioners may not deduct any amount for points because they have not shown whether or when the Luann Court residence became their principal place of residence or that the loans were secured by their principal place of residence, or proven the amount of points they paid.  See sec. 461(g)(2); Rule 142(a).

D.    Whether Petitioners' Airplane Leasing Activity Is
      a Passive Activity

Individuals generally may not deduct losses from a passive activity.  Sec. 469(a).  A passive activity is any activity involving a trade or business in which the taxpayer does not materially participate.  Sec. 469(c)(1).  Rental activities are per se passive.  Sec. 469(c)(2), (4); sec. 1.469-1T(e)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988). Rental activity is any activity in which payments are principally for the use of tangible property.  Sec. 469(j)(8).  An activity is a rental activity for a taxable year if:

> (A)  During such taxable year, tangible property held in connection with the activity is used by customers or held for use by customers; and

> (B)  The gross income attributable to the conduct of the activity during such taxable year represents (or, in the case of an activity in which property is held for use by customers, the expected gross income from the conduct of the activity will represent) amounts paid or to be paid principally for the use of such tangible property (without regard to whether the use of the property by customers is pursuant to a lease or pursuant to a service contract or other arrangement that is not denominated a lease).

Sec. 1.469-1T(e)(3)(i)(A), (B), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).

Petitioners leased the plane to GAPA and SAFT. GAPA and SAFT rented the plane to customers who were learning to fly. The airplane was held by GAPA and SAFT for use by customers. The amounts to be paid to petitioners by GAPA and SAFT were for the use of the airplane. Services were not the dominant element of the relationship. This is a rental activity for purposes of section 469. Rental activity is passive whether or not the taxpayer materially participates in it. Sec. 469(c)(4). Petitioners may not use the $25,000 offset under section 469(i) because it applies only to rental real estate activities. We hold that losses from petitioner's airplane leasing activity are passive losses.

E.   Whether Petitioners Are Liable for Accuracy-Related Penalties

Taxpayers are liable for the accuracy-related penalty on any part of an underpayment which is due to negligence. Sec. 6662(b)(1) and (c). Negligence is the lack of due care or the failure to do what a prudent person would do under the circumstances. Sec. 6662(c); Norgaard v. Commissioner, 939 F.2d 874, 880 (9th Cir. 1991), affg. in part and reversing in part T.C. Memo. 1989-390; Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Negligence includes

any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c). Petitioners must prove that they were not negligent. Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. in part and revg. in part 92 T.C. 1 (1989); Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986), affg. T.C. Memo. 1984-264.

Petitioners contend that they were not negligent because they prepared their tax returns in good faith and to the best of their ability. Respondent argues that petitioners are negligent because they lost many of their records and did not take reasonable steps to reconstruct them. See Lewis v. Commissioner, T.C. Memo. 1983-741. In Lewis, we concluded not only that the taxpayer lost records of travel and entertainment expenses, but also that some of the records may never have existed. We also pointed out that the taxpayer in Lewis deducted some automobile expenses which he said at trial related to personal use of his car. We conclude that this case is distinguishable from Lewis and that petitioners have shown that they were not negligent in the preparation of their 1990 and 1991 tax returns.

To reflect the foregoing and concessions,

Decision will be entered

under Rule 155.