SELETHA O. (MRS. J. C.) THOMPSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1895. Promulgated January 16, 1928.

*E. W. R. Ewing.*, for the petitioner.
*M. E. McDowell, Esq.*, for the respondent.

## OPINION.

PHILLIPS: This proceeding is presented to us on depositions, taken by counsel other than the attorney of record, which include as exhibits several hundred canceled checks and check book stubs containing wholly inadequate memoranda of the purposes for which the checks were drawn, and some testimony as to the general purposes for which such checks were drawn. On the basis of this evidence we are asked to restate petitioner's entire income and

deductions for 1919. The deficiencies in the evidence have to do mainly with deductions claimed as expenses of carrying on a business. The testimony is more satisfactory with regard to certain sales of property upon which the Commissioner is alleged to have erroneously taxed the petitioner.

It appears that during 1919 petitioner was the wife of one H. F. Cauble and was living with her husband in Texas. They had agreed that the earnings of each spouse were to be separate property, an agreement which was recognized by the Texas courts. Separate returns of income were filed by each and the deficiency has been computed on the basis of such separate returns.

During the taxable year the petitioner was engaged in the business of buying and selling oil and gas leases in Texas, prospecting thereon for oil and gas, and in drilling oil and gas wells. The expenses of the business deducted on her return in computing net income, the amounts allowed by the Commissioner, and the amounts now claimed, are as follows:

| Description | Claimed on return | Allowed by Commissioner | Now claimed by petitioner |
|---|---|---|---|
| Pay-roll labor | $10,083.33 | $10,083.33 | $21,061.14 |
| Drilling expense | 24,988.65 | 13,730.06 | 33,741.80 |
| Auto and truck expense | 2,165.89 | 2,165.89 | 1,489.88 |
| Miscellaneous expense | 466.97 | 466.97 | 637.82 |
| Attorneys fees and abstracting | 10,000.00 | 0 | 4,369.73 |
| Interest | 2,660.38 | 1,631.86 | 3,983.07 |
| Depreciation | 15,833.09 | 10,216.29 | } 23,800.83 |
| Depletion | 8,781.82 | 0 | |
| Camp expenses | 0 | 0 | 514.71 |
| Office expense | 0 | 0 | 3,036.18 |
| Geological expense | 0 | 0 | 5,241.00 |
| Insurance | 0 | 0 | 2,100.26 |
| Lease rentals | 0 | 0 | 1,150.00 |
| Advertising | 0 | 0 | 220.00 |
| Commissions | 0 | 0 | 28,021.03 |

The evidence establishes that during 1919 the petitioner expended $1,036.40 for maps, abstracts, legal opinions on titles and recording fees, and $3,333.33 in settlement of a suit involving title to leased lands. Such items have been held by the Board to be capital expenditures to be added to the cost of acquiring the property in connection with which they are paid and considered in computing gain or loss on sale or in fixing the basis for depreciation or depletion. *McCandless*, 5 B. T. A. 1114; *Gopher* v. *Commissioner*, 5 B. T. A. 1216. The same is true of the amounts paid for geological surveys and opinions, unless, perhaps, it is shown that such payments were made for surveys and opinions upon tracts never purchased. There is no such showing in this case, the testimony being confined to a bare statement of the amounts paid. Commissions paid in acquiring property are likewise to be considered a part of the cost of the property acquired, while those paid for selling prop-

erty are properly deducted from the sales price in computing gain or loss. It appears that in computing gain or loss on the sale of leaseholds the Commissioner has so treated some of the amounts now claimed by the petitioner as an expense of the business, and in no case does it appear that the Commissioner has failed to so treat such a payment.

We are without any evidence on which we might base an allowance for depreciation and depletion, although the record would indicate that petitioner is entitled to some depletion. Counsel states in his brief that after the deficiency notice was mailed a further report was made on this matter and that the Commissioner determined $23,800.83 to be a reasonable allowance for depreciation and depletion. If this be so, that amount may properly be allowed in recomputing the deficiency herein.

The evidence respecting the item of pay-roll labor consists of a large number of checks and check-book stubs with testimony to the general effect that such amounts, totaling $21,105.14, were expended for pay rolls. Whether any of such expenditures should properly be capitalized, whether petitioner was to be reimbursed by others for any part of such expeditures, or whether they are properly deductible as ordinary and necessary expenses we are unable to determine from the record. The Commissioner allowed the full amount deducted on the return filed by the petitioner and on the record made we can not disturb his determination of this item.

Much the same situation exists with respect to the item of drilling expenses. Checks or check-book stubs totaling $33,740.80 have been submitted in evidence. The only statement of the purpose of each expenditure is a short itemization such as " derrick, lumber, supplies, carpenter work, drilling contract, labor and derrick, casing, fuel oil, hauling, expense on Blk 98, Erickson Well." While we might conclude that such items as fuel oil, hauling, and minor supplies are properly charged to expense, we are certainly not justified by anything in the record in concluding that such items as casings, derricks and wells, each costing several thousand dollars, are to be charged to expense rather than capitalized as a part of the cost of either permanent equipment used in drilling the well or as improvements upon the leasehold. Furthermore, the evidence indicates that in several instances the petitioner was interested with others in drilling wells and it is not at all clear that these expenditures were all borne by her without reimbursement.

The evidence indicates the expenditure of $514.71 for camp equipment and supplies. What we have said with respect to drilling expense applies with equal force to this item.

The petitioner substantiates by voucher a smaller amount of expenditures for auto and truck expense than was allowed by the Commissioner. It appears quite possible that some of the amounts allowed by the Commissioner are included by petitioner in her claim for drilling expenses, and in view of the unsatisfactory record we do not disturb the Commissioner's determination of the proper amount to be allowed.

The evidence as to the amount claimed for miscellaneous expenses consists only of certain checks with no statement of the purpose of the expenditure. The Commissioner allowed the amount claimed on the. original return. We have no evidence on which we might allow a greater amount.

The evidence establishes that $3,983.07 was paid for interest on indebtedness and the deduction should be increased accordingly. It also shows the expenditure of $3,036.18 for office salaries, supplies and expenses, $2,100.26 for liability, fire and compensation insurance, $1,150 for rentals on leases, and $220 for advertising, all of which appear to be properly deductible as expenses. The Commissioner's determination of the expense of the business is approved except that these additional deductions, totaling $8,857.65, are allowed.

During the taxable year petitioner was operating an apartment house or rooming house in Wichita Falls. The gross income is admitted to be $7,446.86. On her return petitioner deducted $1,581.86 as expenses of operation, which amount the Commissioner allowed. The evidence establishes that such expenses were $2,185.44. The taxable income from this source should be adjusted accordingly.

On her original return petitioner deducted $1,142.20 as debts ascertained to be worthless and charged off within the taxable year. The Commissioner allowed the deduction. Petitioner now claims $1,504.08. The undisputed evidence is that these amounts represent personal loans, worthless checks or payments on notes endorsed, that all of the transactions took place in 1919, that the amounts were uncollectible and were charged off. The increased amount must be allowed.

In her return petitioner deducted $8,945 as the cost of leases which lapsed in 1919. In the deposition submitted there is some testimony with respect to payments made on leases on which petitioner had driller's contract but it is so confused as to be largely unintelligible and in the brief and an amended petition no reference is made to the deduction claimed.

The Commissioner refused to allow a deduction of $31,133.32 claimed by petitioner as the cost of a well. It appears that in 1919 a well had been drilled to a depth of 2,100 feet on property described as the Fore land. The drillers were out of funds. Petitioner en-

tered into an agreement with them by which she acquired a two-thirds interest in the well and in leases upon a large surrounding acreage. As a part of this purchase she paid $31,133.32 to reimburse the drillers for two-thirds of the cost of the well to the date of such purchase. Thereafter the drilling continued throughout 1919 and into 1920, the petitioner paying two-thirds of the cost. The Commissioner refused to permit the deduction of $31,133.32 so paid, classifying it as a capital expenditure. This action of the Commissioner is approved.

In this proceeding the petitioner claims for the first time a loss of $10,000 in a transaction designated as the Chanowsky lease. On April 23, 1919, S. B. Burnett and others executed an oil and gas lease upon four tracts of land to one Chanowsky. It was provided that the lessee should begin operations upon the premises within 6 months after the date of the instrument and that drilling of a well should be prosecuted in good faith to a depth of 3,500 to 4,000 feet unless oil or gas should be discovered at a lesser depth and that such well should be completed within 18 months of the date of said lease. It was further provided that such well should be drilled with cable tools. An assignment of said lease, so far as it related to a 100-acre parcel of one of said tracts, was made to the petitioner on June 2, 1919, for which she paid $10,000. This assignment was filed for record in May, 1920. At the time petitioner acquired this interest in the lease four or five wells were being drilled in the vicinity. Petitioner was drilling one of these some 500 or 600 feet from the leased property. This well was drilled to 1,400 feet and abandoned in 1919. In 1920 petitioner drilled another well on other property about the same distance from the leased premises. The petitioner did not drill on her portion of the leased premises but her testimony is that a well was started on one of the tracts with a spudder, drilled to about 800 feet and abandoned in 1919 or 1920. She further testifies that Burnett, in 1919, claimed that Chanowsky had not met the conditions of the lease and expressed himself as willing for the petitioner to take over the lease.

The claim that this investment was a loss in 1919 is based on the contention that the lessee did not perform the conditions of the lease by starting to drill a well with cable tools within six months. It appears, however, that a well was started in 1919 with a spudder and drilled to a depth of 800 feet. While the lessor complained that this did not comply with the lease, it does not appear that he took any steps to enforce its provisions or to stop this drilling which, according to the testimony, may have continued over into 1920 before the drilling was abandoned. In such circumstances we do not consider that petitioner has carried the burden of showing that her in-

vestment in this lease became worthless in 1919. It is also deserving of some weight that the assignment to the petitioner was recorded by her in 1920, that in the latter year she was drilling within 500 or 600 feet of the leased premises, that the lessor had expressed a willingness that she should take over the entire lease, and that no loss was claimed when the income-tax return of petitioner was filed.

During 1919 petitioner sold a number of leases or interests therein. There is no dispute between the parties with respect to the profit or loss on many of such sales except that in his computation the Commissioner gave effect to the cost of title searches, abstracts, surveys, geological opinions, etc., and to commissions paid. The petitioner claims all these items as ordinary and necessary expenses of her business, which claim we have disallowed above on the ground that they are capital expenditures to be considered in computing gain or loss. The action of the Commissioner in his determination of profit or loss on such sales is therefore approved except as particular transactions are dealt with below.

Petitioner, with others, was the owner of an oil and gas lease upon premises described as in Block 97, Red River Valley Lands subdivision in Wichita County, Texas. In June, 1919, an oil and gas lease upon this tract was conveyed to one Travis in consideration of cash, certain notes, and other payments to be made from oil produced from the premises. As a part of this lease Travis also agreed to deliver to pipe lines for the account of the petitioner and her associates, three-eighths of all oil produced and saved from wells to be drilled on the property. On September 19, 1919, an agreement was entered into by which a portion of this three-eighths interest in the oil and gas produced was to be assigned to one Kamaiky and others, they to pay $100,000 in cash and $360,714 in five notes payable in 30, 60, 90, 120, and 150 days, respectively, from such date, with interest at 6 per cent from date. An assignment of the interest to be conveyed was to be executed by petitioner and placed in escrow until the notes should be paid. The agreement was carried out, the cash and notes were delivered to the petitioner and her associates and the assignment placed in escrow. During 1919 two of such notes were paid with interest and in 1920 the balances were paid as they became due. The assignment was delivered to the assignees by the escrow agent in 1920. In the meantime the assignees received their portion of the oil under the agreement. The parties agree that the amount received by the petitioner in 1919 from the Travis sale was $42,171.18 and that such transaction is taxable in 1919. They further agree that the petitioner's share in the proceeds of the assignment to Kamaiky was $77,102.34 but differ as to whether the latter transaction is taxable in 1919 or 1920.

Under the circumstances here, it is our opinion that a completed transaction took place which was taxable in 1919. There was more than a contract to sell these oil rights to Kamaiky; there was a sale in 1919. The whole of the purchase price was paid over to the vendors or assignors, the vendees or assignees went into possession under the assignment and received the oil produced and the proceeds from its sale. They enjoyed and, until default, were entitled to enjoy, all the rights and privileges which they would have when the assignment was delivered. The petitioner, by placing the assignment in escrow, retained the bare legal title for one purpose only, i. e., to secure payment of the notes. Neither the practical nor the legal situation differs from a conveyance of title to the vendee with a mortgage from him to the vendor to secure payment of a part of the purchase price. The petitioner had conveyed her title, and had received payment. She was entitled to collect the notes as they became due without any further steps or further conveyance on her part. That the instrument conveying legal title was held in escrow as security for payment of the notes can not alter her ownership of the notes. The situation is entirely different from one where the conveyance and the consideration are both placed in escrow pending some future date or occurrence.

We come now to consider what is referred to as the Tuttle lease. The Commissioner determined that petitioner owned a one-half interest and disposed of a one-quarter interest to Enfield and Martin at a profit. We are satisfied that petitioner owned only a one-quarter interest and that Enfield and Martin acquired their interest at the same time as petitioner and at the same price. Petitioner sold portions of her one-quarter interest at prices netting her a profit, as set out in our findings of fact, concerning which there seems to be no dispute. There was one sale to one Ayers upon which the Commissioner computed a profit. The uncontradicted testimony is that such sale was never carried out. The action of the Commissioner in computing gain on these sales in excess of that shown in the findings is reversed.

The Commissioner included as income to petitioner an alleged gain on the sale of certain property to one Addicks. The testimony discloses that while title was taken in the name of the petitioner and conveyance made by her, the property belonged to her husband and the payments were made to him. The petitioner received no income from this transaction.

*Decision will be entered on 20 days' notice, under Rule 50.*