*545 OPINION.
Adams :
It is the contention of the petitioner that the two contracts of January 8, 1926, do not state the facts or agreements correctly, and that the correct agreement was that he was selling *546 only one half of bis stock, or 50 shares, and that G-oldman was selling one half of his stock, or 50 shares, to the Michigan Stock Buyers, Inc. It is further contended that the two contracts as corrected should be construed together and considered as one transaction, and if this were done Goldman was a full partner in the deal and liable for half of the tax.
We are not impressed by this claim nor by the evidence introduced to sustain it. The two contracts were drawn by a capable lawyer, who included therein the agreements as told him by the parties, who were all present and signed the contracts. The contract between petitioner and the corporation provides: “ The first party agrees to sell and the second party agrees to purchase one hundred (100) shares of the capital stock of the Michigan Stock Buyers, Inc.” It was further provided in the contract: “ Said one hundred shares of stock sold shall be assigned to the corporation on the certificate thereof by first party and deposited in escrow with the United States Trust Company of Detroit.”
In the contract between petitioner and, Goldman, we find this recital: “ Whereas first party [petitioner] has disposed of his stock holdings in the Michigan Stock Buyers, Inc., a Michigan corporation, receiving therefor Fifty Thousand Dollars in cash, and Fifty Thousand Dollars in notes, signed by the Michigan Stock Buyers, Inc., and Whereas, second party herein [Goldman] now is the owner of ninety-nine shares of the capital stock of said Michigan Stock Buyers, Inc., and Whereas, it is the desire of the parties hereto that they shall share jointly in the stock holdings of the second party and the assets received by first party from the sale of his stock * * *.” The contract then provided that petitioner was to have a one-half interest in the stock Goldman then owned, or might own in the future in the Michigan Stock Buyers, Inc., and Goldman was to have a one-half interest in any business or investment made or entered into by petitioner with the proceeds from the sale of petitioner’s stock.
We prefer to follow the provisions of these written contracts rather than the vague, uncertain oral testimony. There is nothing whatever in either of the contracts indicating a sale by Goldman of one half of his stock to the corporation and no agreement by it to purchase anything whatever from Goldman. Plainly there were two separate transactions — one a sale by petitioner of his one hundred shares of stock to the Michigan corporation, and the other an agreement by which Goldman gave petitioner a one-half interest in his 99 shares of stock in the Michigan corporation in consideration for’ a one-half interest in a business or investment to be made by petitioner with the proceeds of the sale of petitioner’s stock. Goldman had no interest in the stock sold by petitioner and whatever *547 profit resulted from the sale is taxable to the petitioner. We are not now concerned with the results of the joint venture between petitioner and Goldman. It remains now to consider whether the profits of the transaction were taxable in 1926, when the petitioner received the consideration, or in 1929, when the certificates of stock were released by the escrow agent and delivered to the purchaser.
A good deal of the evidence and of the argument of petitioner’s counsel was devoted to the theory that, because the petitioner endorsed the notes upon which the $50,000 for the cash payment was obtained, petitioner received no consideration of value in 1926. It is sufficient to say in answer to this that petitioner did receive the cash payment of $50,000 and the Michigan company ultimately paid the notes. It was part of the agreement that petitioner endorse the notes, and he received the cash as agreed upon. There was nothing unusual in the transaction, for if the corporation had given him the notes instead of the bank, he would have had to endorse them to discount them.
We think that this case is governed by the rules laid down in Seletha O. Thompson, 9 B. T. A. 1342, John W. Sherwood, 8 B. T. A. 103, and others hereinafter cited, and that the entire profit is taxable in 1926.
In both of these cases as in the instant case the seller received the entire consideration in the taxable year and the stock certificates and lease assignments were merely placed in escrow to secure the payment of the notes. As there were a hundred notes it would have been impractical to attach the stock certificates to them as collateral security, so the difficulty was met by placing them in escrow. Cf. S. L. Meyer, Executor, 23 B. T. A. 1201; Parish-Watson & Co., 2 B. T. A. 851; Boston American League Baseball Club, 3 B. T. A. 149; B. P. Bailey, 18 B. T. A. 105; Ohio Brass Co., 17 B. T. A. 1199.
Of the cases cited by petitioner, Theodore J. Swift,. 20 B. T. A. 1099, and Charles W. Dahlinger, 20 B. T. A. 176, related to the statute governing capital gains which required that sales be consummated after December 31,1921, and they were decided mainly on the meaning of the word “ consummated.” In addition, it may be observed that the Swift case involved a sale of real estate where the deed had been placed in escrow and was not to be delivered until final payment, while the Dahlinger case really sustains the contention of the respondent herein. In K. E. Merren, 18 B. T. A. 156, the consideration was in escrow during the taxable year, and in Rebecca J. Murray, 28 B.T.A. 624, the question at issue was whether' or not there was an installment sale. None of these cases is applicable here.
Petitioner also relies upon the case of Solomon Silberblatt, 28 B. T. A. 73, but that case is clearly distinguishable from the instant *548 case. In the Silberblatt case the petitioner placed the stock in escrow to be delivered to the purchaser if and when the latter made prompt payment of the deferred installments as they fell due. The right to recall the stock from escrow, if any deferred payment was not promptly made, was expressly reserved to the petitioner. Under this reserved right of recall title did not pass until all deferred payments were made. This right to recall the stock from escrow was not in the agreement in the instant case and clearly distinguishes them.
Relative to the claim of the petitioner that he is entitled to a deduction of $12,814.58 for reduction or remission of consideration made by him, it is sufficient to say that if any deduction is allowable therefor it would be for 1928 and not 1926. The same question was before us in S. L. Meyer, Executor, 23 B. T. A. 1201, where we said:
We fail to find any evidence to tlie effect that he made any gift of the three notes in. the year 1923. After one note of $2,500 was paid in 1924, he surrendered the remaining three. The gift of the notes was made in 1924 and can in no way affect decedent’s tax liability for 1923.
The respondent determined that the one hundred $500 notes had a fair market value of par. All of the notes falling due in 1926 and. all but about $12,000 during later years were paid. Petitioner has not produced sufficient competent evidence to rebut the prima facie correctness of respondent’s finding, but, on the contrary, the evidence tends to support it.
We have no fault to find with the many Michigan cases cited by petitioner, but “ we are concerned only with the meaning and application of a statute enacted by Congress, in the exercise of its plenary power under the Constitution, to tax income. The exertion of that power is not subject to state control.” Burnet v. Harmel, 287 U. S. 103.

Decision will be entered for the respondent.