T.C. Summary Opinion 2009-145


UNITED STATES TAX COURT


NICHOLAS DAMER AND MARGARET FLYNN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4138-08S.               Filed September 21, 2009.


Nicholas Damer and Margaret Flynn, pro sese.

John M. Wall, for respondent.


DEAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue,

and all Rule references are to the Tax Court Rules of Practice
and Procedure.

For 2005 respondent determined a $9,389 deficiency in
petitioners' Federal income tax and a section 6662(a) accuracy-
related penalty of $1,878.  The issues remaining[1] for decision
are whether petitioners are:  (1) Entitled to mortgage interest
deductions greater than the amounts respondent determined; (2)
entitled to deduct in 2005 a passive activity loss sustained in
2002; (3) subject to the passive activity loss limitations of
section 469; and (4) liable for a section 6662(a) accuracy-
related penalty.

## Background

Some of the facts have been stipulated and are so found.
The stipulation of facts and the exhibits received into evidence
are incorporated herein by reference.  When the petition was
filed, petitioners resided in California.

During 2005 petitioner Nicholas Damer (Mr. Damer) worked as
a licensed private investigator and as an attorney.  Petitioner
Margaret Flynn worked as an independent contractor performing
pediatric physical therapy.

---

[1]The amounts of petitioners' tuition and fees deduction,
itemized deductions, alternative minimum tax, self-employment
tax, and self-employment tax deduction are computational matters
to be resolved in the parties' Rule 155 computations consistent
with the Court's decision.  See secs. 55-59, 164(f), 222, 1401,
1402.

Sometime in 1986 petitioners constructed an office building, Liberty Court, which houses Mr. Damer's law practice and is also held by petitioners as rental real estate.

Over the years petitioners acquired several loans that were used to construct or improve Liberty Court, to fund Mr. Damer's law practice, and to improve petitioners' personal residence. For example, in September 1998 petitioners acquired a $650,000 loan from First National Bank of Northern California (FNB) in order to renew or modify an existing commercial real estate loan. The FNB loan was secured by Liberty Court. In December 2005 they acquired a $540,508.05 loan from Bank of America (BOA). The BOA loan was used to pay off the FNB loan, and it too was secured by Liberty Court. In December 2002 they acquired a $644,000 loan from HomeComings Financial (HCF) that was secured by a first mortgage on their residence. In January 2004 they acquired a $100,000 line of credit from HCF that was secured by a second mortgage on their residence. In October 2005 they acquired a $975,340.58 loan from HCF. The 2005 HCF loan was used to pay off the 2002 and 2004 HCF loans, and it also was secured by a first mortgage on their residence. In November 2005 petitioners acquired a $195,000 loan from Greenpoint Mortgage Funding, Inc. (GMF), which was secured by a second mortgage on their residence.

With each loan, petitioners financed certain fees, charges, or taxes, and in some instances they received cash or "Refunds" from the loan proceeds. They also claimed deductions for mortgage interest, points, and fees, charges, or taxes on their 2005 Form 1040, U.S. Individual Income Tax Return. On Schedule C, Profit or Loss From Business, they claimed a deduction for mortgage interest of $58,057 with respect to Mr. Damer's law practice. On Schedule E, Supplemental Income and Loss, they claimed deductions for mortgage interest of $31,868 and bank fees of $33. On Schedule A, Itemized Deductions, they claimed deductions for mortgage interest of $16,936 and points of $4,875. During the examination of their return, Mr. Damer told respondent's Appeals officer that their deductions for mortgage interest included points, fees, charges, or taxes from previous loans that were paid when those loans were refinanced in 2005.

From third-party payor reports respondent determined that petitioners paid mortgage interest of: (1) $28,034 to HCF; (2) $35,945 to FNB; (3) $10,018 to HCF; and (4) $672 to HCF. Respondent disallowed a portion of petitioners' deductions for mortgage interest because the amounts they claimed were more than the amounts their lenders reported. Respondent then allocated petitioners' deductions for mortgage interest to Schedules C, E, and A, respectively, because he could not match "specific

mortgage interest to specific Forms or Schedules".[2]  But respondent made no adjustment to petitioners' Schedule A deduction for points of $4,875.

## Discussion

### I.  Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden to prove that the determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  But the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner if the taxpayer introduces credible evidence with respect to the issue.  Sec. 7491(a)(1).  Petitioners bear the burden of proof because they have neither alleged that section 7491(a) applies nor proven that they have complied with the substantiation and recordkeeping requirements of section 7491(a)(2)(A) and (B).

### II.  Deductions for Mortgage Interest

#### A.  General Principles

Taxpayers are generally allowed to deduct all interest paid or accrued within the taxable year on indebtedness.  Sec. 163(a).  But in the case of a taxpayer other than a corporation, no deduction is allowed for personal interest.  Sec. 163(h)(1).

---

[2]It is unclear from the record the amounts of mortgage interest from each loan that respondent allocated to each schedule.

"Personal interest" includes any interest allowable as a deduction other than: (1) Interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee); (2) any interest that is taken into account under section 469 in computing income or loss from a passive activity of the taxpayer; and (3) any qualified residence interest. Sec. 163(h)(2)(A), (C), (D). "[Q]ualified residence interest" means any interest that is paid or accrued during the taxable year on acquisition indebtedness[3] or home equity indebtedness[4] with respect to any qualified residence of the taxpayer. Sec. 163(h)(3)(A). In addition, if a taxpayer prepays an interest

---

[3]"[A]cquisition indebtedness" means any indebtedness that is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer and is secured by the residence. Sec. 163(h)(3)(B)(i). Acquisition indebtedness also includes any indebtedness secured by the residence resulting from the refinancing of acquisition indebtedness but only to the extent the amount of the indebtedness resulting from the refinancing does not exceed the amount of the refinanced indebtedness. Id. And the aggregate amount treated as acquisition indebtedness for any period must not exceed $1 million ($500,000 if a married individual files a separate return). Sec. 163(h)(3)(B)(ii).

[4]"[H]ome equity indebtedness" means any indebtedness (other than acquisition indebtedness) secured by a qualified residence to the extent the aggregate amount of the indebtedness does not exceed the fair market value of the qualified residence reduced by the amount of acquisition indebtedness with respect to the residence. Sec. 163(h)(3)(C)(i). And the aggregate amount treated as home equity indebtedness for any period must not exceed $100,000 ($50,000 if a married individual files a separate return). Sec. 163(h)(3)(C)(ii).

obligation and computes his/her taxable income under the cash method of accounting, then the prepayments of interest must be spread over the term of the loan and deducted to the extent that monthly payments on the loan include the ratable portions (except certain "points" deductible pursuant to section 461(g)(2)). Sec. 461(g)(1); Schubel v. Commissioner, 77 T.C. 701, 702-703 (1981); Jackson v. Commissioner, T.C. Memo. 2005-159.

For cash method taxpayers, like petitioners, a deduction requires that mortgage interest be paid in cash or its equivalent. Don E. Williams Co. v. Commissioner, 429 U.S. 569, 578-579 (1977); Eckert v. Burnet, 283 U.S. 140, 141 (1931); Menz v. Commissioner, 80 T.C. 1174, 1185 (1983). A promissory note is generally not considered the equivalent of cash but merely a promise to pay. Helvering v. Price, 309 U.S. 409, 413 (1940); Nat Harrison Associates, Inc. v. Commissioner, 42 T.C. 601, 624 (1964). If the obligation to pay mortgage interest is satisfied through the issuance of notes to the same lender to whom the mortgage interest obligation is owed, there has been no payment of mortgage interest; rather, payment has merely been postponed. Davison v. Commissioner, 107 T.C. 35, 41 (1996), affd. 141 F.3d 403 (2d Cir. 1998); Stone v. Commissioner, T.C. Memo. 1996-507.

As defined in caselaw "interest" means "compensation for the use or forbearance of money." Deputy v. du Pont, 308 U.S. 488, 498 (1940). Therefore, amounts characterized as mortgage

interest must be distinguished from fees, charges, or taxes, which are computed without regard to the amount borrowed, the duration of the loan, the degree of credit risk, or the condition of the money market.  Id.; Pac. First Fed. Sav. & Loan Association v. Commissioner, 79 T.C. 512 (1982).  To the extent that the loan proceeds were used for business or investment purposes, the fees or charges might be deductible over the life of the loan under section 162(a) or 212.  Goodwin v. Commissioner, 75 T.C. 424, 439-442 (1980), affd. 691 F.2d 490 (3d Cir. 1982); Wilkerson v. Commissioner, 70 T.C. 240, 262-263 (1978), revd. on other grounds 655 F.2d 980 (9th Cir. 1981); Lovejoy v. Commissioner, 18 B.T.A. 1179 (1930); Trivett v. Commissioner, T.C. Memo. 1977-161, affd. 611 F.2d 655 (6th Cir. 1979).

In addition, certain fees, charges, or taxes--such as recording or transfer fees/taxes--are costs of acquiring the property and must be capitalized and included in the property's basis pursuant to section 263(a)(1).  Thompson v. Commissioner, 9 B.T.A. 1342, 1345 (1928); Erfurth v. Commissioner, T.C. Memo. 1987-232; Gibbons v. Commissioner, T.C. Memo. 1976-125.

If the loan proceeds were used for personal purposes, then the fees, charges, or taxes cannot be deducted or capitalized (except certain "points" deductible pursuant to section 461(g)(2)).  Sec. 262(a); Hendrick v. Commissioner, 35 T.C. 1223,

1235 (1961); Rev. Rul. 67-297, 1967-2 C.B. 87 (loan origination fee (or points) paid in connection with the acquisition of a home mortgage loan guaranteed by the Veterans' Administration is a charge for services and is neither deductible as interest nor treated as an additional cost of the property); cf. Goodwin v. Commissioner, supra at 439-442.

With these principles in mind, the Court now turns to petitioners' deductions for mortgage interest and related fees, charges, or taxes.

B.  FNB Mortgage Interest and Related Fees, Charges, or Taxes

Petitioners provided a BOA loan document that shows that they used some of the BOA loan proceeds to pay mortgage interest of $1,613.36 to FNB in December 2005.

The Court finds that petitioners paid mortgage interest of $1,613.36 to FNB in December 2005 from the BOA loan proceeds. But because petitioners have not proven that the $1,613.36 was not included in the $35,945 that respondent allowed as a deduction for mortgage interest paid to FNB in 2005, they nevertheless are not entitled to deduct the $1,613.36.  See Davison v. Commissioner, supra at 41; Stone v. Commissioner, supra.

The FNB loan document shows that petitioners also financed:

| Description | Amount |
| --- | --- |
| "Modification Endorsement 110.5 Fee" | $850 |
| Recording | 50 |
| Tax lien service fee | 55 |
| Document preparation fee | 250 |
| Flood certificate fee | 40 |
| Loan fees | 6,500 |

Pursuant to Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), the Court finds that petitioners are entitled under sections 162(a) and/or 212[5] to deductions of $2,821.72 for the fees or charges that were paid or incurred in 2005.[6]  See Crown v. Commissioner, 77 T.C. 582, 593-595 (1981); Wilkerson v. Commissioner, supra at 262-263; McAdams v. Commissioner, 15 T.C. 231, 234-235 (1950), affd. 198 F.2d 54 (5th Cir. 1952).  In addition, consistent with petitioners' previous Federal income tax returns, they should allocate the deductible amounts equally to Schedules C and E.  See Estate of Ashman v. Commissioner, 231 F.3d 541, 543 (9th Cir. 2000), affg. T.C. Memo. 1998-145.  But petitioners are not entitled to deduct the recording fee.  See

[5]An individual's rental real estate activity can constitute a trade or business for purposes of sec. 162(a).  See, e.g., Hazard v. Commissioner, 7 T.C. 372 (1946).  But see, e.g., Balsamo v. Commissioner, T.C. Memo. 1987-477 (rental real estate activity did not constitute a trade or business; rather, the property was held for the production of income within the meaning of sec. 212(1)).

[6]$7,695 (total allowable FNB loan fees or charges) ÷ 10 years (amortization period) = $769.50 per year ÷ 12 months (per year) = $64.13 per month x 44 months (remaining amortization period of the FNB loan as of Jan. 1, 2005) = $2,821.72.

Thompson v. Commissioner, supra at 1345; Erfurth v. Commissioner, supra; Gibbons v. Commissioner, supra.

    C.   BOA Mortgage Interest and Related Fees, Charges, or Taxes

Petitioners have not shown that they paid mortgage interest to BOA in 2005; therefore, they are not entitled to a mortgage interest deduction for that loan. See secs. 163(a), 6001.

The BOA loan documents show that petitioners also financed:

| Description | Amount |
|---|---|
| Flood fee | $30 |
| Reconveyance fee | 15 |
| Documentation fee | 30 |
| "ALTA" loan policy premium (title insurance) | 1,146 |
| Endorsements (title insurance) | 100 |
| Escrow fee | 850 |
| Recording fee | 20 |
| Recording fee for reconveyance to come | 20 |
| Notary fees | 20 |
| "Overnight/Courier/Misc." fees | 60 |

Pursuant to Cohan v. Commissioner, supra at 543-544, the Court finds that petitioners are entitled to deduct under sections 162(a) and/or 212 the 2005 amortizable amounts of the fees or charges (i.e., $18.63[7]). See Crown v. Commissioner, supra at 593-595; Wilkerson v. Commissioner, supra at 262-263; McAdams v. Commissioner, supra at 234-235. Again, petitioners

_____

[7]Petitioners failed to establish the amortization period of the BOA loan. The Court assumes that the BOA loan was amortizable over 10 years. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). Thus, $2,236 (total allowable BOA loan fees or charges) ÷ 10 years (amortization period) = $223.60 per year ÷ 12 months (per year) = $18.63 per month x 1 month (Dec. 2, 2005)= $18.63.

should allocate the deductible amounts equally to Schedules C and E.  See Estate of Ashman v. Commissioner, supra at 543.  But petitioners are not entitled to deduct the reconveyance fee, recording fee, or recording fee for reconveyance to come.  See Thompson v. Commissioner, 9 B.T.A. at 1345; Erfurth v. Commissioner, T.C. Memo. 1987-232; Gibbons v. Commissioner, T.C. Memo. 1976-125.

> D.  HCF and GMF Mortgage Interest and Related Fees, Charges, or Taxes

> 1.  Mortgage Interest

Respondent contends that because petitioners obtained the proceeds to pay off the 2002 and 2004 HCF loans from the same lender and never had unfettered access to the funds used to pay off those loans, they are not entitled to deduct the outstanding interest obligations (i.e., $3,811.95[8]) that were paid when they refinanced the 2002 and 2004 HCF loans with the 2005 HCF loan.

Petitioners, on the other hand, contend that the HCF and GMF loans "in part, refinanced debt going back to the 1970's and related to [p]etitioner Damer's law practice."  Therefore, according to petitioners, they are entitled to deduct any mortgage interest paid in 2005 and to deduct any fees, charges,

---

[8]The $3,811.95 is based on mortgage interest of $340.58 + $1,872.36 + $1,515.72 + $45.04 + $38.25 from Sept. 9 to Oct. 8, 2005.

or taxes to the extent that they were paid or incurred to finance Mr. Damer's law practice.

The Court finds that petitioners are not entitled to deduct the outstanding interest obligations of the 2002 and 2004 HCF loans that were "paid" with the 2005 HCF loan because the interest was not paid within the meaning of section 163(a).  See Davison v. Commissioner, 107 T.C. at 41.  The Court therefore finds that petitioners' HCF mortgage interest deductions are limited to the amounts respondent determined; i.e., $28,034, $10,018, and $672.  In addition, the amounts should be allocated to Schedules A and C according to the percentages of each loan that the Court has determined were used to finance Mr. Damer's law practice, see infra pp. 16-18; i.e.:  (1) 85.2 percent to Schedule A and 14.8 percent to Schedule C for the 2002 HCF loan; (2) 85.8 percent to Schedule A and 14.2 percent to Schedule C for the 2004 HCF loan; and (3) 60.4 percent to Schedule A and 39.6 percent to Schedule C for the 2005 HCF loan.[9]

Petitioners have not shown that they paid mortgage interest to GMF in 2005; therefore, they are not entitled to a mortgage interest deduction for that loan.  See secs. 163(a), 6001.

---

[9]It is unclear from the notice of deficiency (and the record) which HCF loan is attributable to the amounts respondent allowed for mortgage interest deductions.  The Court leaves this to the parties to sort out in their Rule 155 computations.

2. <u>HCF- and GMF-Related Fees, Charges, or Taxes</u>

The 2002 HCF loan document shows that petitioners financed:

| <u>Description</u> | <u>Amount</u> |
|---|---|
| Loan origination fee | $3,220.00 |
| Appraisal fee | 500.00 |
| Credit report | 20.00 |
| Tax service | 98.00 |
| Document fee | 161.00 |
| Closing fee | 100.00 |
| Underwriting fee | 350.00 |
| Flood certificate fee | 10.50 |
| Wire fee | 5.00 |
| Demand/statement fee | 50.00 |
| ALTA loan policy fee | 1,315.55 |
| Recording trust deed | 59.00 |
| Escrow fee | 350.00 |
| Notary fee | 40.00 |
| Courier/overnight fee | 30.00 |

The 2002 HCF loan document does not show the amortization period of that loan. But it shows that petitioners received a refund of $95,376.66 from the loan proceeds.

The 2004 HCF loan document shows that petitioners financed:

| <u>Description</u>[1] | <u>Amount</u> |
|---|---|
| Loan origination fee | $1,000.00 |
| Credit report | 20.00 |
| Funding review fee | 95.00 |
| Processing fee | 395.00 |
| Additional items | 195.50 |
| Title insurance | 110.00 |
| Recording trust deed | 25.00 |
| Escrow fee | 250.00 |
| Notary fee | 60.00 |
| Courier/overnight fee | 30.00 |

[1]Petitioners were also required to pay in advance hazard insurance of $3,663 and "Banana Republic misc. acct" of $24. Petitioners, however, have not shown that the amount of the hazard insurance attributable to Mr. Damer's law practice was not deductible in 2004. See sec. 1.263(a)-4(f)(1), (8), Income Tax

Regs.  Thus, petitioners cannot deduct any portion of the hazard insurance in 2005.  In addition, the Court surmises, and petitioners have not proven otherwise, that the $24 for Banana Republic misc. acct was a personal expenditure.  Consequently, petitioners are not entitled to deduct any portion of that amount in 2005.  See sec. 262(a).

The 2004 HCF loan document does not show the amortization period of that loan.  But it shows that petitioners received cash of $14,162.50 from the loan proceeds.

The 2005 HCF loan document shows that petitioners financed:

| Description[1] | Amount |
| --- | --- |
| Appraisal fee | $150 |
| Credit report | 35 |
| Tax service | 128 |
| Funding review fee | 266 |
| Processing fee | 395 |
| Underwriting fee | 450 |
| Flood certificate fee | 6 |
| Wire fee | 5 |
| Demand/statement fee | 44 |
| ALTA loan policy fee | 1,785 |
| 1st lender endorsement (title insurance) | 50 |
| Recording trust deed | 75 |
| Escrow fee | 500 |
| Notary fee | 40 |
| Courier/overnight fee | 45 |

[1]Petitioners also financed a loan origination fee of $4,875 that they deducted on Schedule A as points, and respondent made no adjustment to it.  See supra pp. 4-5.

The 2005 HCF loan document shows that petitioners financed the principal and related fees, charges, or taxes for a 30-year amortization period.  It also shows that petitioners received a refund of $386,041.93 from the loan proceeds.

The GMF loan document shows that petitioners financed:

| Description | Amount |
| --- | --- |
| Document fee | $295 |
| Processing fee | 395 |
| "CB Tahoe for misc. collection" | 133 |
| Notary fee | 60 |
| ALTA loan policy fee | 617 |
| Recording trust deed | 65 |
| Escrow fee | 250 |
| Courier/overnight fee | 30 |
| "Edocs" processing fee | 50 |

The GMF loan document does not show the amortization period of that loan. In addition, it shows that petitioners did not receive cash or a refund from the loan proceeds.

To the extent that the fees or charges were incurred in connection with the acquisition, construction, or improvement of petitioners' residence, the fees or charges are nondeductible personal expenses (except the deduction for points of $4,875 that respondent allowed). See sec. 262(a); Goodwin v. Commissioner, 75 T.C. at 439-442; Hendrick v. Commissioner, 35 T.C. at 1235. To the extent that the fees or charges were incurred in connection with Mr. Damer's law practice, petitioners are entitled to deduct those amounts under section 162(a) as determined infra. See Goodwin v. Commissioner, supra at 439-442; Wilkerson v. Commissioner, 70 T.C. at 262-263. But in no case are petitioners entitled to deduct the recording fees. See Thompson v. Commissioner, 9 B.T.A. at 1345; Erfurth v.

Commissioner, T.C. Memo. 1987-232; Gibbons v. Commissioner, T.C. Memo. 1976-125.

Petitioners failed to establish the amount of the proceeds of each loan that was used to finance Mr. Damer's law practice. Pursuant to Cohan v. Commissioner, 39 F.2d at 543-544, the Court finds that only 14.8[10] percent of the 2002 HCF loan was used to finance Mr. Damer's law practice. The Court also finds that the 2002 HCF loan was amortizable over 30 years. See id. Therefore, petitioners are entitled to a deduction of $829.88[11] under section 162(a) for the outstanding amortizable fees or charges of the 2002 HCF loan that were paid or incurred in 2005. See id.

The Court finds that only 14.2[12] percent of the 2004 HCF loan was used to finance Mr. Damer's law practice. See id. The Court also finds that the 2004 HCF loan was amortizable over 30 years. See id. Therefore, petitioners are entitled to a deduction of $299.26[13] under section 162(a) for the outstanding

---

[10]$95,376.66 (refund) ÷ $644,000 (2002 HCF loan).

[11]$6,250.05 (total allowable 2002 HCF loan fees or charges) ÷ 30 years (amortization period) = $208.34 (amortizable per year) ÷ 12 months (per year) = $17.36 per month x 323 months (remaining amortization period/months as of Jan. 1, 2005) x 14.8% (loan proceeds attributed to law practice) = $829.88.

[12]$14,162.50 (cash) ÷ $100,000 (2004 HCF loan).

[13]$2,180 (total allowable 2004 HCF loan fees or charges) ÷ 30 years (amortization period) = $72.67 (amortizable per year) x 29 years (remaining amortization period as of Jan. 1, 2005) x 14.2% (loan proceeds attributed to law practice) = $299.26.

fees or charges of the 2004 HCF loan that were paid or incurred in 2005.  See id.

The Court finds that only 39.6[14] percent of the 2005 HCF loan was used to finance Mr. Damer's law practice.  See Cohan v. Commissioner, supra at 543-544.  Therefore, petitioners are entitled to a deduction of $12.87[15] under section 162(a) for the fees or charges that were paid or incurred with respect to the 2005 HCF loan.  See id.

The Court finds, however, that no portion of the 2005 GMF loan was used to finance Mr. Damer's law practice; petitioners have not proven otherwise.  See id.  Consequently, petitioners are not entitled to deduct any fees or charges with respect to the 2005 GMF loan.  See id.

E.  2002 Mortgage Interest Carried Over to 2005

Mr. Damer testified that when their 2002 Federal income tax return was audited in 2005, respondent disallowed Schedule E deductions of $27,900 because the amount exceeded the passive activity loss limitations of section 469.  Petitioners contend that they are entitled to carry over the 2002 passive activity loss to 2005.  They assert that 51.54 percent of that amount

---

[14]$386,041.93 (refund) ÷ $975,340.58 (2005 HCF loan).

[15]$3,899 (total allowable 2005 HCF loan fees or charges) ÷ 30 years (amortization period) = $129.97 (amortizable per year) ÷ 12 months (per year)= $10.83 x 3 months (Oct. 4 to Dec. 31, 2005) x 39.6% (loan proceeds attributed to law practice) = $12.87.

(i.e., $14,380) was interest and that the amount can be added to the mortgage interest deductions claimed on their 2005 Schedules C and E.

Section 469(b), however, provides that if any loss or credit from an activity is disallowed under section 469(a), then the loss or credit is treated as a deduction or credit allocable to the activity in the next taxable year.  See also sec. 1.469-1(f)(4), Income Tax Regs. (any disallowed deductions or credits are allocated among the taxpayer's activities for the succeeding taxable year).  Consequently, petitioners' $27,900 passive activity loss from 2002 was to be carried over to 2003, not to 2005.  Petitioners also failed to establish that any of the 2002 passive activity loss remains to be deducted in 2005 after being carried over to 2003 and then to 2004.[16]  See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Halle v. Commissioner, 7 T.C. 245, 247-250 (1946), affd. 175 F.2d 500 (2d Cir. 1949); Baker v. Commissioner, T.C. Memo. 2008-247 (statements in tax returns are only claims of the taxpayer, not proof of his/her deductions or losses).

---

[16]On Form 8582, Passive Activity Loss Limitations, petitioners reported a prior year's unallowed loss of $39,087.

III.  Passive Activity Loss Limitations

On petitioners' 2005 Schedule E and Form 8582, they reported passive activity losses of $68,660,[17] of which they reported zero as their "Deductible rental real estate loss".  They claimed that amount (i.e., zero) on line 17 of their Form 1040.

Petitioners contend that they are not subject to the passive activity loss limitations of section 469 and that they are entitled to deduct their Schedule E losses without limit because they meet the test for material participation.

Section 469(a) generally disallows any passive activity loss[18] or passive activity credit.[19]  The term "passive activity" includes any trade or business in which the taxpayer does not materially participate, any activity engaged in for the production of income, and any rental activity regardless of whether the taxpayer materially participates.[20]  Sec. 469(c)(1),

---

[17]Based on 2005 losses of $19,030 (property A) + $5,327 (property B) + $5,216 (property C) + $39,087 (prior years' unallowed losses).

[18]"Passive activity loss" means the excess of the aggregate losses over the aggregate income from all passive activities. Sec. 469(d)(1).

[19]"Passive activity credit" means the amount, if any, by which the sum of the credits from all passive activities allowable for the taxable year under subpt. D of pt. IV of subch. A or subpt. B (other than sec. 27(a)) exceeds the regular tax liability of the taxpayer for the taxable year allocable to all passive activities.  Sec. 469(d)(2).

[20]Material participation means that the taxpayer is involved in the activity's operations on a regular, continuous, and

(continued...)

(2), (4), (6).  But under section 469(c)(7) rental activities of a qualifying taxpayer in a real property trade or business are not a per se passive activity under section 469(c)(2).  <u>Kosonen v. Commissioner</u>, T.C. Memo. 2000-107.  Rather, the qualifying taxpayer's rental activities are treated as a trade or business--subject to the material participation requirements of section 469(c)(1).  <u>Fowler v. Commissioner</u>, T.C. Memo. 2002-223; sec. 1.469-9(e)(1), Income Tax Regs.

A taxpayer may qualify for the real property trade or business exception if:  (1) More than one-half of the personal services performed in trades or businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates; and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.  Sec. 469(c)(7)(B)(i) and (ii).  In the case of a joint return, either spouse must satisfy both requirements.  Sec. 469(c)(7)(B).

Each petitioner failed to establish that more than one-half of the personal services he/she performed in trades or businesses were performed in real property trades or businesses during 2005

---

[20](...continued)
substantial basis.  Sec. 469(h); see also sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988) (an individual is treated as materially participating if the individual satisfies any one of the seven enumerated tests).

and that he/she performed more than 750 hours of services during 2005 in real property trades or businesses.  Thus, the Court need not decide whether they materially participated.  Consequently, petitioners' passive activity losses or credits for 2005 are limited by section 469.

IV.  Accuracy-Related Penalty

Respondent determined a section 6662(a) accuracy-related penalty based on petitioners' substantial understatement of their 2005 Federal income tax.[21]

In pertinent part, section 6662(a) and (b)(2) imposes an accuracy-related penalty equal to 20 percent of the underpayment that is attributable to a substantial understatement of income tax.  A substantial understatement of income tax exists if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000.  Sec. 6662(d)(1)(A).  The term "understatement" means the excess of the amount of the tax required to be shown on the return for the taxable year over the amount of the tax imposed that is shown on the return less any rebate as defined by section 6211(b)(2).  Sec. 6662(d)(2)(A). The amount of the understatement is reduced by the portion of the understatement that is attributable to:  (1) The taxpayer's tax

_____

[21]The Court therefore need not discuss whether petitioners were negligent or disregarded rules or regulations.  See sec. 6662(b); Fields v. Commissioner, T.C. Memo. 2008-207.

treatment of the item if there is or was substantial authority for the treatment; or (2) any item if the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return and there is a reasonable basis for the taxpayer's tax treatment of the item. Sec. 6662(d)(2)(B).[22]

Initially, the Commissioner has the burden of production with respect to any penalty, addition to tax, or additional amount. Sec. 7491(c). The Commissioner satisfies this burden of production by coming forward with sufficient evidence that indicates that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner satisfies this burden of production, the taxpayer must persuade the Court that the Commissioner's determination is in error by supplying sufficient evidence of an applicable exception. Id.

In view of the computational adjustments, see supra note 1, and the Court's holdings herein, it is unclear whether there is a substantial understatement of income tax for 2005. The Court leaves for the parties to determine as part of the Rule 155 computations whether there is a substantial understatement. If a substantial understatement exists, petitioners are liable for the

---

[22]Petitioners have not proven that they satisfy the adequate disclosure and substantial authority provisions. See sec. 6662(d)(2)(B).

accuracy-related penalty because respondent will have met his burden of production and petitioners have not established a reasonable cause or good faith defense.

V. Conclusion

In sum, respondent's determinations are sustained except as otherwise stated; and to the extent that a substantial understatement of income tax exists, petitioners are liable for a section 6662(a) accuracy-related penalty.

To reflect the foregoing,

Decision will be entered

under Rule 155.